IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *ex rel.*, JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR IMPERIAL CASUALTY AND INDEMNITY COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>PATRICK MONTGOMERY, EMPLOYMENT TRADITIONS, INC.; PEOPLE ESSENTIALS, INC.; E.T. 2, INC.; E.T. 4, INC.; E.T. 6, INC.; E.T. 10, INC.; CFC I/ET, INC.; CFC II/ET, INC.; MONTGOMERY, INC; ACRISURE BUSINESS OUTSOURCING SERVICES, LLC; ACRISURE, LLC; and CAMPBELL MANAGEMENT GROUP, INC.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-11-863-C<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER

Plaintiff John Doak, Insurance Commissioner for the State of Oklahoma, filed the present Motion to Remand based on <u>Burford</u> abstention and Motion in Limine in his capacity as Receiver for Imperial Casualty and Indemnity Company; Defendants Employment Traditions, Inc. ("ETI"), its affiliates, and Patrick Montgomery filed two Motions in Limine seeking exclusion of Plaintiff's witness and exhibit list as well as Plaintiff's summary exhibits.

*A. Burford Abstention*

Recently, on May 1, 2012, Plaintiff filed a Motion seeking to remand this action to state court on the basis of Burford abstention. Burford v. Sun Oil Co., 319 U.S. 315 (1943). Plaintiff filed this Motion prior to the Court's ruling on Defendants' pending summary judgment motions, which the Court granted. This recent ruling disposed of all claims against Defendants ABOS, Acrisure, and Campbell, some of which were equitable in nature. In response to the Court's questioning whether remand was an appropriate Burford remedy in light of the non-equitable nature of the remaining claims, Plaintiff filed a reply in which he argues that equitable claims remain—namely, the constructive fraudulent transfer claim against Defendant ETI. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730-31 (1996) (finding that "Burford might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law"). Because the cited-to issues raised as the basis for Burford abstention are no longer at issue, however, whether remand is an appropriate remedy in light of the summary judgment ruling is moot.

Initially, Plaintiff pointed to two important state interests implicated in this action as calling for this Court to abstain from hearing the case: First, Plaintiff cites the ABOS Defendants' allegations of fraud against the receiver, various guaranty associations, and the Insurance Commissioner; second, Plaintiff cites the ABOS Defendants' sought-for exclusion, as unreliable, of the Uniform Data Standards ("UDS") database. (Pl.'s Br., Dkt. No. 75, at 3.) Because all of Plaintiff's claims against the ABOS Defendants failed to survive summary

judgment, however, the ABOS Defendants' allegations of fraud raised in their trial brief are moot. The ETI Defendants also seek exclusion of the UDS database, but do so pursuant to Fed. R. Evid. 1006. However, below the Court finds that exclusion of the UDS database under Fed. R. Civ. P. 1006 is not warranted. Accordingly, no cited basis for abstention remains.[1] New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of City of New Orleans, 491 U.S. 350, 358 (1989) ("Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred."). Regardless of whether the cited basis for abstention remains, present circumstances do not call for abstention.

---

[1] Raised for the first time in his Reply, Plaintiff states that "[t]he ETI Defendants assert distinct issues implicating the interpretation of unsettled law as it relates to insurance liquidation procedures and state guaranty associations and contest they are entitled to absolution due to generalized allegations of fraud of the insurance company's shareholders prior to insolvency." (Pl.'s Br., Dkt. No. 88, at 5.) As support, Plaintiff cites to Defendant's Motion in Limine regarding Plaintiff's summary exhibits, which is herein denied, and Defendants' Response to Plaintiff's Motion in Limine. However, Plaintiff does not cite to the pages in these documents that allegedly raise such issues, and the Court can only guess to which statements Plaintiff refers.

In their Response to Plaintiff's Motion in Limine, Defendants cite their Amended Answer which states "'that according to allegations of the insurance commissioner's office, the insurer[] . . . May 17, 2012. was involved in illegal and/or fraudulent acts against its policyholders. These Defendants were policyholders and, therefore, Plaintiff's claims are barred as against these Defendants.'" (Def.'s Br., Dkt. No. 81, at 3 (quoting Amend. Answer, Dkt. No. 27, at 16).) However, to the extent that Plaintiff relies on this statement in the Amended Answer as the basis for presently requesting abstention—some six months after Defendants filed their Amended Answer—this last-minute advancement discredits the persuasiveness of Plaintiff's argument. To the extent that Defendants' Motion in Limine raises issue with previous fraud committed by the former principals of the insurers, this argument is raised to refute the accuracies of documents created by those principals offered to establish damages, not as a general absolution of liability. Accordingly, the Court is unclear as to what issues Plaintiff refers.

In <u>NOPSI</u>, the Supreme Court distilled the <u>Burford</u> abstention doctrine to the following:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

<u>NOPSI</u>, 491 U.S. at 361 (quoting <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 814 (1976)).

As support for abstaining from the present case, Plaintiff relies heavily on <u>Grimes v. Crown Life Ins. Co.</u>, where the Tenth Circuit outlined the following factors as relevant to a court's determination of whether the exercise of jurisdiction is proper:

> (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry; (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues; and, (4) whether difficult or unusual state laws are at issue.

857 F.2d 699, 704-05 (10th Cir. 1988) (citations omitted).[2]

---

[2] <u>Grimes</u> is a pre-NOPSI case and its precedence has been questioned by other courts. <u>Am. Sec. Life Assur. Co. of N.C. v. Mason</u>, 836 F. Supp. 333, 334 (E.D.N.C. 1993) ("The court also finds that <u>Grimes</u>' precedential value is suspect because '<u>Grimes</u> was based mainly on Second Circuit authority which "adopted a broad view of abstention" . . . [and] <u>NOPSI</u> does not permit a broad view of abstention.'" (quoting <u>Melahn v. Pennock Ins., Inc.</u>, 965 F.2d 1497 (8th Cir. 1992)).

While the first and third Grimes factors weigh in favor of abstention, the Court is not persuaded that the case raises complex issues calling for abstention. Despite the involvement of insolvent insurers, this case entails breach of contract, negligence, and breach of fiduciary duty claims—none of which present "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result" or raise "a hotly disputed question of state law.'" NOPSI, 491 U.S. at 361 (quoting Colo. River, 424 U.S. at 814); Quackenbush, 517 U.S. at 709.  Nor has Plaintiff shown that the exercise of federal jurisdiction "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" NOPSI, 491 U.S. at 361 (quoting Colo. River, 424 U.S. at 814).  The absence of such an issue distinguishes this case from Grimes, 857 F.2d at 705 (finding that the issue involved was a "fundamental and important question of state law and policy").  Accordingly, Plaintiff has not shown that the present case fits within the narrow reach of Burford abstention, and the Motion to Remand (Dkt. No. 75) is denied.

## B.  Motions in Limine

Defendants Montgomery, ETI, and its affiliates moved in limine for exclusion of all of Plaintiff's witnesses and exhibits for failure to comply with Fed. R. Civ. P. 26(a)(3). Pursuant to that Rule, parties must identify and provide information regarding witnesses and exhibits that may be presented at trial.  Fed. R. Civ. P. 26(a)(3).  Plaintiff argues that it did not submit its final witness and exhibit list due to the pendency of requests for extension of deadlines.  The Court notes that Plaintiff did not file the list after the denial of Plaintiff's first

request for extension. In fact, Plaintiff waited almost two more weeks after the Court denied his second request for extension to finally file his witness and exhibit list.

However, because Rule 26 was designed to prevent surprise and prejudice to the opposing party and to the extent the listed witnesses and exhibits were known to Defendants prior to Plaintiff's delinquent filing, the indeed harsh sanction of excluding all witnesses and exhibits is unwarranted. Cf. Bell v. City of Topeka, Kan., No. 06-4026-JAR, 2007 WL 628188 (D. Kan. Feb. 26, 2007) (striking, pursuant to uncontested motion, final witness and exhibit list when witnesses listed were never previously identified by either party); (Pl.'s Br., Dkt. No. 85 Ex. 1).

Information and witnesses previously undisclosed, however, will be stricken. From the Court's comparison, it appears that all witnesses were previously known and that only the following documents listed in the Final Exhibit List were not listed in Plaintiff's Initial Disclosures: "Post-receivership correspondence between Plaintiff and any party," and "Documents created or published by any party." (Compare Pl.'s Br., Dkt. No. 85 Ex. 1, with Pl.'s List, Dkt. No. 52.) Accordingly, Defendants' Motion in Limine is warranted regarding only those two listed exhibits.

Finally, ETI Defendants also moved to exclude in limine under Fed. R. Evid. 1006 two summary exhibits offered by Plaintiff for failure to comply with Fed. R. Evid. 1006. Pursuant to this Rule, a party may "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. However, the proponent of the summary "must make the

originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Id. And "all of the records from which [the summary] is drawn [must be] otherwise admissible." State Office Sys., Inc. v. Olivetti Corp. of Am., 762 F.2d 843, 845 (10th Cir. 1985). "The admission of summaries under Rule 1006 is within the sound discretion of the trial court." Harris Mkt. Research v. Marshall Mktg. & Commc'ns, Inc., 948 F.2d 1518, 1525 (10th Cir. 1991).

Specifically, Defendants seek to exclude the UDS database as a summary in light of Plaintiff's failure to produce requested documents used to compile this database. The UDS database is one created, in part, by the Oklahoma Property and Casualty Insurance Guaranty Association—a statutorily created non-profit, unincorporated entity created pursuant to the Oklahoma Property and Casualty Insurance Guaranty Association Act, 36 Okla. Stat. § 2005. The purpose of this Act is "to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to provide an association to assess the cost of protection among insurers." Id. § 2002(A). The UDS database consists of submitted "statements of the covered claims paid by the Association and estimates of anticipated claims on the Association." Id. § 2010(D).

Defendants cite their request for electronic documents contained in the UDS database and Plaintiff's failure to provide those documents in that format as the basis for exclusion. However, in the October e-mail exchange exhibited by both parties in their motions, Plaintiff offered to "discuss what the reports contain, what information you need, and to set up a time

for inspection." (Pl.'s Br., Dkt. No. 86 Ex. 1, at 4.) Plaintiff made this request because the data included "claims related to all insureds under the jurisdiction of the guaranty association [and recognized the need] . . . to cull relevant and responsive information." (Pl.'s Br., Dkt No. 86, at 4-5.) Plaintiff contends Defendants never responded to this offer, which Defendants do not dispute. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 515 n.9 (9th Cir. 1985) (finding that "[t]he requirements for Rule 1006 are met when the trial judge ascertains that the underlying documents are made available for inspection, and this is so even if opposing counsel fails to avail himself of the opportunity to review the documents" (citation omitted)).

Regardless of Plaintiff's contention that this evidence is not a summary to which this Rule applies, Plaintiff made the originals or duplicates[3] available for examination rendering exclusion pursuant to this Rule unwarranted. Air Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d 1, 8-9 (1st Cir. 1996) (distinguishing as separate parties' discovery obligations and the obligation to make available for copying or inspection pursuant to Rule 1006).

Defendants also seek exclusion of an actuarial report created by Merlinos & Associates, Inc., that purports to establish the estimated amount owed by each professional

---

[3] While Defendants never received the raw data, they did receive Plaintiff's redacted UDS database in Microsoft Excel format on November 14, 2011, in which Plaintiff culled personal information of workers' compensation claimants. (Pl.'s Br., Dkt. No. 86 Ex. 1.) See United States v. Foley, 598 F.2d 1323, 1338 (4th Cir. 1979) (finding that production of computer printout of data contained on diskette admissible under Rule 1006 noting that "the diskettes themselves only contained data that was provided to defendants themselves by their multiple listing service in the normal course of business.").

employment organization to Plaintiff pursuant to their policies and agreements. The Court is unable to locate the report at issue and finds the only passing references to this report in the e-mail exchange and in Plaintiff's witness and exhibit list. (Pl.'s List, Dkt. No. 52, at 5 ("Actuarial reports and documents from Merlinos & Associates, Inc."); (Pl.'s Br., Dkt. No. 86 Ex. 1 ("I have the actuarial report. . . . [A]ttached is an actuarial report from Merlinos and Associates, Inc. related to amounts owed by the defendants.").) Defendants do not substantiate their assertion with citation supporting their argument. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, Defendants have not shown that exclusion is warranted.

Plaintiff also filed a Motion in Limine seeking to exclude all references to alleged wrongdoing by former principals of Plaintiff and Providence Property and Casualty Insurance Company, Park's predecessor entity. (Pl.'s Br., Dkt. No. 59, at 2.) However, evidence regarding the former principals' wrongdoing may be relevant to Defendants' assertions that they were overcharged and that the documentary evidence substantiating Plaintiff's damages is inaccurate. Plaintiff has not established how such evidence would unfairly prejudice or confuse the jury. Fed. R. Evid. 403. Accordingly, because this evidence's probative value is not substantially outweighed by its potential to confuse the issues and unfairly prejudice the jury, exclusion at this stage is unwarranted.

Additionally, Plaintiff seeks exclusion of references to any payments by Defendants to any party. However, broadly excluding "evidence, inference, or questioning regarding any


...

employment organization to Plaintiff pursuant to their policies and agreements. The Court is unable to locate the report at issue and finds the only passing references to this report in the e-mail exchange and in Plaintiff's witness and exhibit list. (Pl.'s List, Dkt. No. 52, at 5 ("Actuarial reports and documents from Merlinos & Associates, Inc."); (Pl.'s Br., Dkt. No. 86 Ex. 1 ("I have the actuarial report. . . . [A]ttached is an actuarial report from Merlinos and Associates, Inc. related to amounts owed by the defendants.").) Defendants do not substantiate their assertion with citation supporting their argument. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, Defendants have not shown that exclusion is warranted.

Plaintiff also filed a Motion in Limine seeking to exclude all references to alleged wrongdoing by former principals of Plaintiff and Providence Property and Casualty Insurance Company, Park's predecessor entity. (Pl.'s Br., Dkt. No. 59, at 2.) However, evidence regarding the former principals' wrongdoing may be relevant to Defendants' assertions that they were overcharged and that the documentary evidence substantiating Plaintiff's damages is inaccurate. Plaintiff has not established how such evidence would unfairly prejudice or confuse the jury. Fed. R. Evid. 403. Accordingly, because this evidence's probative value is not substantially outweighed by its potential to confuse the issues and unfairly prejudice the jury, exclusion at this stage is unwarranted.

Additionally, Plaintiff seeks exclusion of references to any payments by Defendants to any party. However, broadly excluding "evidence, inference, or questioning regarding any

amount Defendants paid to any person or entity not included in this action" is also unwarranted. More specifically, however, Plaintiff also seeks exclusion of payments made under a surplus loan agreement to Providence Holdings, Inc. ("PHI") due to a prior finding by the Tenth Circuit that PHI, not Park, is liable under that agreement. <u>Pyramid Diversified Servs., Inc. v. Providence Prop. & Cas. Ins. Co.</u>, 433 F. App'x 687, 689 (10th Cir. 2011).

In 2008, Park purchased Providence Property and Casualty Insurance ("PPC") from PHI Providence, PPC's parent company. Previous to this purchase, PHI had entered into a surplus arrangement with professional employer organizations whereby PHI was loaned $3.5 million with the understanding that PHI would in turn lend funds to PPC "to meet regulatory requirements as to capital and surplus, and for other purposes." (Order, <u>Pyramid Diversified Servs. Inc. v. Providence Prop & Cas. Ins. Co., et al.</u>, No. CIV-09-622-HE, Dkt. No. 211, at 2.)

While the ABOS Defendants reference two collateral requirements as included in the contracts between ETI and Park and payments thereof by ETI to PHI, neither Plaintiff nor the ETI Defendants sufficiently explain how the contractual liability findings of the Tenth Circuit as between PACA and Skilstaf—two PEO parties in the <u>Pyramid</u> case—and PHI, PPC, and Park render payments made by ETI to PHI inadmissible. While it is true that PHI, not Park, is liable for debts owed to PACA and Skilstaf due to the court's finding that the 2005 debt-to-equity conversion triggered PHI's repayment obligation, Plaintiff does not explain how this ruling alone is sufficient to establish that the relevance of any payments

made by ETI to PHI is substantially outweighed by unfair prejudice or confusion to the jury. Accordingly, Plaintiff has not shown that exclusion at this stage is warranted.

## CONCLUSION

For the above-stated reasons, Defendants' Motion in Limine (Dkt. No. 58) is PARTIALLY GRANTED regarding Plaintiff's submitted exhibits described as "Post-receivership correspondence between Plaintiff and any party," and "Documents created or published by any party," and DENIED as to all remaining entries; Defendants' Motion in Limine (Dkt. No. 61) is DENIED; Plaintiff's Motion for Remand (Dkt. No. 75) is DENIED; Plaintiff's Motion in Limine (Dkt. No. 59) is DENIED.

IT IS SO ORDERED this 23rd day of May, 2012.

_____
ROBIN J. CAUTHRON
United States District Judge